PLANIN, APPELLANT, *v.* CITY OF CLEVELAND, BOARD OF BUILDING STANDARDS, APPELLEE.

(No. 878985—Decided July 20, 1970.)

*Mr. Milton Schulman*, for appellant.
*Mr. Clarence L. James, Jr.*, director of law, and *Mr. Robert I. Zashin*, for appellee.

WINTER, J. (of Medina County, sitting by assignment). This cause is before the court on appeal from a final order of the Board of Building Standards and Building Appeals of the City of Cleveland, Ohio.

The transcript of the proceedings before the board contains the record of two hearings, August 4, 1969, and August 11, 1969, at which times the appellant was present with counsel. On August 11, 1969, the board affirmed the order of the Commissioner of Housing requiring compliance with the Codified Ordinances of the City of Cleveland in ten specific respects. The appeal to the board was based on the alleged fact that the order of the Commissioner of Housing was arbitrary, capricious and discriminatory and was not based on law or fact.

The only evidence offered during the proceedings before this court was a copy of a letter signed by Mr. Schulman addressed to the Commissioner of Housing, advising the commissioner not to enter and inspect or view the premises, and a letter acknowledging receipt of Mr. Schulman's letter, signed by C. L. Sheboy, Commissioner of Housing, addressed to Mr. Schulman (plaintiff's exhibits 1 and 2). In addition, eleven color photos purportedly taken in June 1968 (identified as plaintiff's exhibits 3 through 13), and two black and white photos of the subject premises (plaintiff's exhibits 14 and 15) taken by counsel. These exhibits were admitted for the file but not as a part of the transcript of the board as requested by appellant.

Counsel for the appellant, after discussion of the illegal aspect of the city's inspection following aforesaid notice not to inspect, rested his case and moved for a directed verdict.

Aside from a statement by Mr. Zashin, counsel for the board, that the inspections were "* * * exterior visual inspections * * *" no evidence was adduced as to any illegal entry on the part of the city.

The order of the Commissioner of the Division of Housing, dated April 17, 1968, required compliance with the Codified Ordinances of the City of Cleveland in the following respects:

1. Repair gutters and downspouts.
2. Install gutters and downspouts and connect to a sewer. (North and south)
3. Repair porch floors (front side).
4. Repair and paint structure exterior and maintain in weather right condition.
5. Clean up exterior of premises of all debris and maintain in safe and sanitary condition.
6. Repair fence on premises and maintain in a safe and sanitary condition.
7. Replace steps on front porch.
8. Repair service sidewalk.
9. Repair roof and maintain same weather tight.
10. Repair railing of exterior steps.

This order was affirmed by the Board of Building Standards and Building Appeals by its final order of August 11, 1969, and is the subject appeal now before this court for consideration.

Counsel for the appellant herein claims an illegal search was made of the subject premises by the Division of Housing, and for that reason moved this court for a directed verdict. To support his contention counsel relies on the cases of *Camara* v. *Municipal Court*, 387 U. S. 523, 18 L. Ed. 2d 930, and *See* v. *Seattle*, 387 U. S. 541, 18 L. Ed. 2d 943, both decided by the Supreme Court of the United States (in a 6 to 3 decision) on June 5, 1967.

In the *Camara case* the appellant brought his action alleging that he was awaiting trial on a criminal charge of

violating the San Francisco Housing Code by refusing to permit a warrantless inspection of his residence, and that a writ of prohibition should issue to the criminal court because the ordinance authorizing such inspections is unconstitutional on its face.

The court in summary, at page 534, said:

"* * * we hold that administrative searches of the kind at issue here are significant intrusions upon the interests protected by the Fourth Amendment, that such searches when authorized and conducted without a warrant procedure lack the traditional safeguards which the Fourth Amendment guarantees to the individual, * * * *Because of the nature of the municipal programs under consideration, however, these conclusions must be the beginning, not the end, of our inquiry.*" (Emphasis ours.)

In the *See* case the defendant was convicted, in a Washington state court, for refusing to permit a representative of the city of Seattle Fire Department to inspect his locked commercial warehouse without a warrant.

The court concluded, at pages 545 and 546:

"* * * That administrative entry, without consent, upon the portions of commercial premises which are not open to the public may only be compelled through prosecution or physical force within the framework of a warrant procedure. We do not in any way imply that business premises may not reasonably be inspected * * * nor do we question such accepted regulatory techniques * * *. We hold only that the basic component of a reasonable search under the Fourth Amendment—that it not be enforced without a suitable warrant procedure—is applicable * * * to business as well as to residential premises."

These cases appear to have a two-fold impact on building inspection:

*First,* despite a permit or license authorizing or requiring a particular inspection, an occupant of a dwelling cannot be prosecuted for refusal to permit an inspection of his dwelling unless the inspection is made under a judicially issued search warrant; and

*Second,* the owner or occupant of any building or structure, whether it be used for a residential or commer-

cial purpose, cannot be prosecuted for refusal to permit an inspection thereof unless the inspection is made under a judicially issued search warrant.

(See May-June issue, Building Standards Monthly, pp. 14-19, Attorney Marcus Crahan, Jr.)

This court is of the opinion that the situation presented by the case at bar is to be distinguished from the *Camara* and *See cases* in that no evidence was adduced to show that the appellant was deprived of her right to be secure in her person, house, papers and effects, "against unreasonable searches and seizures * * *," as guaranteed by the Fourth Amendment of the Constitution of the United States.

The evidence, uncontroverted of record, indicates that the order of the Commissioner of the Division of Housing was the result of exterior visual inspections, made from a point or points off, *not on,* the premises of the appellant-owner.

In the opinion of this court an off-the-premises exterior visual inspection is to be distinguished from a premises inspection made after entry. Such exterior visual inspection does not violate the protection guaranteed by the Fourth Amendment securing a person against unreasonable searches within the meaning thereof nor as contemplated by the Supreme Court of the United States in the *Camara* and *See cases, supra.*

Further, the question was raised as to the right to subpoena and question the inspector whose report is the basis for the division order, subject of this appeal. It is the opinion of this court that the appellant did have the right to subpoena for cross-examination the inspector who made the inspection report and that the appellant was entitled to a reasonable period of time within which to serve such subpoena. However, according to the record of the August 4, 1967, hearing, the board was of the opinion that the appellant had been afforded ample time for this purpose prior to the meeting in question. After some further discussion, counsel for the appellant requested that the acting chairman of the board be sworn and submit to cross-examination. Upon refusal, both counsel

and the appellant left the hearing. Thereafter the August 4th hearing was continued until August 11, 1969.

According to the record, at the outset of the August 11, 1969, continued hearing, the secretary stated: "* * * a new notice was sent out dated August 4, 1969, for hearing today at 11:00 a. m. "* * *

"We have the attendance sheet signed by Mrs. Mildred Planin, the owner who was present at the time scheduled this morning. Her attorney appeared at a later time. However, he did not sign the attendance sheet."

Thereafter the board proceeded with the hearing. Mr. Gill, of the Division of Housing, advised the board that Mr. Bruhn, the inspector who made the inspection of appellant's premises, was available for questioning by the board and could be reached by telephone in a few moments. The chairman then announced:

"Since this hearing has been legally called and due notice served, and the owner having made an appearance before this board, and since both the owner and the attorney of record have left the premises, a motion would be in order to sustain the Commissioner of the Division of Housing * * *."

Whereupon the division order was affirmed.

As previously stated, the appellant had the right to subpoena inspector Bruhn for examination. However, having had a reasonable period of time prior to the August 11, 1969, hearing during which such subpoena could have been served, and having entered appearance at the August 11th hearing, and then having elected to leave and not be present at the time action was taken by the board, appellant is now precluded from asserting that August 11, 1969, final order of the board was arbitrary, capricious and discriminatory, and was not based on law or fact; and waives the right to object thereto.

The order of the Board of Building Standards and Building Appeals is hereby affirmed and motion of appellee taxing cost of the transcripts herein pursuant to R. C. 2506.02, is hereby granted.

*Order affirmed.*